IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD WHITMIRE | : | CIVIL ACTION |
| | : | No. 05-253 |
| and | : | |
| | : | |
| JEFFREY GLENN | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| KVAERNER PHILADELPHIA SHIPYARD, INC. | : | |

O'NEILL, J.                                                    JUNE 27, 2007

## MEMORANDUM

Plaintiffs Ronald Whitmire and Jeffrey Glenn filed a complaint against defendant Kvaerner Philadelphia Shipyard, Inc. alleging unlawful race discrimination in employment, racial harassment, failure to promote, and unlawful retaliation.[1]  Before me now are defendant's motion for summary judgment, plaintiffs' response, and defendant's reply thereto.

## BACKGROUND

Kvaerner Philadelphia Shipyard constructs container ships for use in the United States domestic freight carriage market.  Whitmire and Glenn, both African-American males, were hired by Kvaerner in late 2000 as material handlers.  Prior to their hire, neither Glenn nor Whitmire had ever operated a crane or other heavy equipment and neither had worked in a shipyard.  With Kvaerner, plaintiffs' duties included driving and operating the forklift as well as

---

[1]Plaintiffs concede their claims for harassment and Whitmire's retaliation claim.

operating the bridge crane and the magna crane in the steel storage building.

Plaintiffs were both hired at Transportation Level I.  Like other employees without prior relevant experience, Whitmire and Glenn were classified as "indirect workers" under the collective bargaining agreement and were not eligible for training on heavy equipment. Individuals with prior experience operating cranes and/or heavy equipment in a shipyard were hired at Transportation Level II and were eligible for advancement as they gained proficiency on the heavy equipment at the shipyard.

Following his hire, Glenn was trained on various cranes and other equipment at the shipyard.  Whitmire was not given any structured training.  Despite being paid as a fork truck driver, Glenn also was required to operate many other pieces of equipment at the shipyard.  Both plaintiffs eventually were trained on all of Kvaerner's equipment.

Plaintiffs assert that they were systematically denied the opportunity to be trained on several pieces of equipment at the shipyard by Matt LaRochelle, defendant's steel yard supervisor.  Plaintiffs note that Bill Haggarty, a Caucasian employee, as well as other employees hired after them were trained while they were passed over.  When plaintiffs finally were given training on the equipment, LaRochelle denied them the opportunity to operate the equipment on a regular basis.  Further, shortly after he was hired, Glenn heard LaRochelle comment to another employee that he hoped that Kvaerner "doesn't hire more darkies."

On August 23, 2002, plaintiffs' union re-negotiated its contract with Kvaerner.  As part of that collective bargaining agreement, plaintiffs were included in a small group of employees who were prevented  contractually from being promoted within the company.  The agreement read as follows:

> In addition, the 8 Transportation I (Indirect) workers named below, are
> grandfathered into the (Direct) Transportation II classification and will receive the
> rate of $15.25 (entry level of Direct) as of September 2, 2002.  Thereafter, they
> will be eligible to move into the intermediate level within one year and will
> remain at that level permanently but will receive the annual increases accordingly.

Eight employees were listed; only two were Caucasian.

In 2004, after they had both been trained on the heavy-duty equipment, Glenn and

Whitmire complained to Paul Weininger, Kvaerner's Human Resources Manager, that they were

not being properly paid for the work they were doing.  Specifically, plaintiffs were operating

machinery commensurate with the work being performed at the position of Transportation 2 –

Final Level but were only paid at the level of Transportation 2 – Intermediate Level.  As a result

of plaintiffs' discussion with Weininger, Glenn was advanced to the Transportation 2 – Multi-

Skill Level in June 2004 and Whitmire advanced to that level in July 2004.  The multi-skill level

is the highest pay rate in the transportation department.

Both plaintiffs request economic damages equal to the additional overtime on heavy

equipment for which they were not eligible until they were fully trained in 2004.

STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides, in relevant part, that

summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(c) (2007).   Rule 56(e) provides that when a properly supported motion for summary

judgment is made, "an adverse party may not rest upon the mere allegations or denials of the

adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided

3

in this rule, must set forth specific facts showing that there is a genuine issue for trial."

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the burden of demonstrating that there are no genuine issues of material fact. Id. at 322-323.  If the moving party sustains the burden, the nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 255.  In addition, "the existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against the moving party.'" Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978), quoting Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 878 (3d Cir. 1972).

## DISCUSSION

Under Title VII it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a) (2007).  Under the framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), Whitmire and Glenn must first establish a prima facie case of employment discrimination.  Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005).  To establish that prima facie case, plaintiffs must demonstrate that: (1) they are members of a protected class; (2) they are qualified for their jobs; (3) they suffered an adverse

4

employment action; and (4) similarly situated unprotected employees were treated differently.

Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004).  The burden then shifts to

the employer to articulate a legitimate nondiscriminatory reason for the adverse employment

decision.  Fasold, 409 F.3d at 184.  The employee then must offer evidence "that is sufficient to

allow a reasonable finder of fact to find by a preponderance of the evidence that the employer's

proffered reasons are false or pretextual."  Id.

      Defendant does not dispute the first two elements of plaintiffs' prima facie case; they

agree that Whitmire and Glenn are both members of a protected class and are qualified for their

jobs.  Kvaerner argues that plaintiffs were not subject to any adverse employment action,

plaintiffs are not comparable to employees hired into the "direct" worker category, and any

decisions made by Kvaerner were governed by the collective bargaining agreement, a legitimate,

non-discriminatory reason.  I will discuss each of these arguments in turn.

1.      Adverse Employment Action

      An adverse employment action is one that affects an employee's "compensation, terms,

conditions, or privileges of employment."  42 U.S.C. § 2000e-2(a)(1).  "A tangible employment

action constitute a significant change in employment status, such as hiring, firing, failing to

promote, reassignment with significantly different responsibilities, or a decision causing a

significant change in benefits.  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)

(defining tangible employment actions in claims involving race, age, sex and national origin

discrimination); see also Durham Life Ins. Co. v. Evans, 166 F.3d 139, 153-54 (3d Cir. 1999).

      Plaintiffs assert that defendant's failure to allow plaintiffs to be trained on shipyard

equipment, which led to plaintiffs' ineligibility for overtime work, constitutes an adverse

employment action.  In their depositions, both plaintiffs testified that Kvaerner's failure to train and promote them resulted in substantial losses in overtime opportunities and accompanying pay. To support this assertion, they reference the deposition of plaintiff Glenn, who described his financial harm as: "I missed out on overtime.  Daily overtime and eight hours [of] overtime on weekends."  This, if proven, is a tangible adverse employment action.  See Albright v. City of Philadelphia, 399 F. Supp. 2d 575, 587 (E.D. Pa. 2005) ("Lack of overtime opportunities . . . is a form of reduction in compensation.").  Therefore plaintiffs have met the adverse employment action prong of their prima facie case.

2.      Similarly Situated Employees

Kvaerner next argues that Whitmire and Glenn were not treated differently than similarly situated employees.  I agree.  In Title VII cases where disparate treatment is alleged, plaintiffs must identify similarly situated individuals outside of their protected class who were treated more favorably than plaintiffs.  See Economos v. Scotts Co., 2006 U.S. Dist. LEXIS 84646, at *15 (E. D. Pa. Nov. 20, 2006).  In their response, plaintiffs identify Bill Haggarty, a Caucasian employee, as a similarly situated employee outside of the protected class who received training while plaintiffs were passed over.  Haggarty was hired after plaintiffs but trained before them. Plaintiffs also assert that "other employees hired after" plaintiffs were trained before plaintiffs.

Whitmire and Glenn, with other minority workers and two white workers, were hired as material handlers.  They, like the other employees hired as material handlers, had little to no prior experience with the forklift and no prior experience with large cranes.  In plaintiffs' depositions they admit that they were treated the same as all other workers in the Transportation II classification.  Plaintiffs, besides naming Bill Haggarty as a Kvaerner employee trained before

6

them, do not offer any evidence that he was similarly situated.  They offer no facts regarding his prior experience, qualifications, or what position he was hired to perform at Kvaerner.  Without that information, a reasonable jury cannot consider him a similarly situated individual who was treated differently than Whitmire and Glenn.  See, e.g., Taylor v. Brandywine Sch. Dist., 202 Fed. App'x 570, 576 (3d Cir. 2006) (upholding district court's grant of summary judgment because "[t]he facts demonstrate that [plaintiff]'s salary complied with the District's seniority tables and pay grades, and met or exceeded those of her peers who were similarly situated." and "[s]ecretaries who made more than [plaintiff] either had a higher degree of training or were serving in positions with higher pay grades.").  Plaintiffs have not offered enough evidence for a reasonable jury to conclude that they were treated differently than other similarly situated employees.[2]  Therefore, plaintiffs fail to meet the fourth prong of their prima facie case.

3.      Legitimate Non-Discriminatory Reason

Although I need not continue with my analysis at this point because plaintiffs have failed to demonstrate that similarly situated unprotected employees were treated differently, I further note that Kvaerner has offered a legitimate non-discriminatory reason for its actions and that plaintiffs have not offered enough evidence for a reasonable jury to find that reason to be pretextual.  Once defendant has offered a legitimate non-discriminatory reason for the adverse employment action, plaintiffs must offer evidence that: (1) "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication;" or (2) "allows the factfinder to infer that discrimination was

_____

[2]Plaintiffs' contentions that they were trained after other unnamed Caucasian workers hired after them also fails for the same reason.

7

more likely than not a motivating or determinative cause of the adverse employment action."

Fuentes v. Perksie, 32 F.3d 759, 762 (3d Cir. 1994). "[T]he non-moving plaintiff must

demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions

in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could*

rationally find them unworthy of credence and hence infer that the employer did not act for [the

asserted] non-discriminatory reasons." Id. (internal citations omitted).

Kvaerner offers a legitimate non-discriminatory reason why plaintiffs were not trained on

the large cranes – their level of training was dictated by the terms of the collective bargaining

agreement. Under the agreement effective at the time plaintiffs were hired,, employees without

relevant experience were hired at Transportation Level 1 and operated forklifts. These

individuals were classified as "indirect" workers and were not eligible for training on heavy

equipment. Eight individuals were included as indirect Transportation Level 1 employees

including both plaintiffs and two Caucasian employees. Individuals with prior experience

operating cranes and/or heavy equipment in a shipyard were hired at Transportation Level 2 and

were eligible for advancement as they became proficient on other heavy equipment at the

shipyard.

The union contract was amended in August 2002. Under the new collective bargaining

agreement, the eight Transportation 1 workers were grandfathered into the direct Transportation

2 classification. They received a raise and were eligible to advance to the intermediate pay rate

under the union contract pay scale. The agreement also limited the former indirect workers

ability to move up within the company; it stated that the eight employees would receive annual

increases but would remain at the intermediate level permanently. Kvaerner did not train

8

Whitmire and Glenn because of the terms of the collective bargaining agreement.

Whitmire and Glenn attempt to challenge Kvaerner's legitimate non-discriminatory reason for not training them by citing another section of the collective bargaining agreement. In the general comments on training, the agreement provides:

> The Company intends and the Union acknowledges that all employee[s] should b[e] educated and skilled to the same level as employees of North European shipyards as determined by the company. In order to meet this standard, the Company has the exclusive right to develop a Training Program designed to ensure that its employees receive the appropriate training in order to achieve a world-class level of productivity. The Training Program will include classroom training, overseas training and extensive on-the-job training from building ships at the Kvearner Philadelphia Shipyard which some employees will receive. The Training Program is intended to improve the productivity level of the individual workers by not only improving their vocational skills, but also by improving their ability to work effectively as part of the group and the overall organization so that each worker can function as part of a workforce that will be operating at levels of efficiency that will enable the Kvearner Philadelphia Shipyard to compete effectively worldwide.

Plaintiffs seem to argue that this section of the agreement refutes Kvaerner's claims that the collective bargaining agreement is the reason why Kvaerner did not train Whitmire and Glenn. I disagree. This section does not guarantee training for every Kvaerner employee. It only states the general proposition that Kvaerner employees will be trained so that they can perform their jobs efficiently and effectively. It certainly does not guarantee that every employee will be trained to perform jobs that would qualify them for more overtime hours or higher pay.[3]

An appropriate Order follows.

---

[3]Plaintiffs also seem to argue that their job titles have been improperly manipulated by defendant so that plaintiffs have not been paid for the work they were doing. Both plaintiffs, however, were hired as material handlers and were paid as material handlers. Further, both plaintiffs were eventually trained and promoted.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RONALD WHITMIRE                    :          CIVIL ACTION
                                   :          No. 05-253
        and                        :
                                   :
JEFFREY GLENN                      :
                                   :
                                   :
        v.                         :
                                   :
KVAERNER PHILADELPHIA SHIPYARD, INC.  :

ORDER

And now, this 27th  day of June, 2007, upon consideration of defendant's motion for

summary judgment, plaintiffs' response, defendant's reply thereto, and for the reasons set forth in

the accompanying memorandum, defendant's motion for summary judgment is GRANTED.

Judgment is entered in favor of defendant Kvaerner Philadelphia Shipyard and against plaintiffs

Ronald Whitmire and Jeffrey Glenn.

        The clerk is ordered to close this case statistically.

                                        s/Thomas N. O'Neill, Jr.
                                        THOMAS N. O'NEILL, JR., J.